UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN GEOSEARCH, INC.,

                Plaintiff,

v.

TC ENERGY CORPORATION,

                Defendant.

_____/

Case No. 2:20-cv-12600

HONORABLE STEPHEN J. MURPHY, III

## OPINION AND ORDER GRANTING IN PART
## AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [10]

Plaintiff Michigan GeoSearch, Inc. sued Defendant TC Energy[1] on several state and federal law claims. ECF 1. Defendant moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). ECF 10. The parties fully briefed the motion, ECF 13, 14, and a hearing is unnecessary. *See* E.D. Mich. L.R. 7.1(f). For the reasons below, the Court will grant in part and deny in part the motion to dismiss.

### BACKGROUND[2]

Plaintiff and Defendant are companies in the natural gas industry. ECF 1, PgID 1–2. Since the 1970s, Defendant—through a subsidiary for a time—has owned

---

[1] The parties explained that the case caption should be amended from "TC Energy, Inc." to "TC Energy Corporation" because of a misnomer. ECF 10, PgID 93 n. 1; ECF 13, PgID 121 n. 1. The Court will therefore order the Clerk of the Court to amend the case caption accordingly.

[2] Because the Court must view all facts in the light most favorable to the nonmoving party, *see Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008), the Court's recitation does not constitute a finding or proof of any fact.

a natural gas storage field in Macomb, Michigan. *Id.* at 3. The underground field spans three hundred acres and is in a depleted reef reservoir. *Id.*

Located Southeast of Defendant's gas storage field is Plaintiff's property. *Id.* Since 1989, Plaintiff has owned a well on the property, the reef reservoir beneath it, and oil and gas leases associated with the property. *Id.*

In 1994, Plaintiff observed its well re-pressurizing. *Id.* at 6. Plaintiff believed the pressure readings showed an "influx of natural gas from somewhere." *Id.* Plaintiff theorized the "high-pressure [] storage gas" from Defendant's reservoir "was migrating south-eastward" and re-pressurizing Plaintiff's reservoir.[3] *Id.*

Plaintiff therefore contacted Defendant[4] about the migration concerns. *Id.* In response, a Director for Defendant denied any migration or leakage from Defendant's land. *Id.* Instead, the Director claimed the well's re-pressurizing came from elsewhere. *Id.* at 9.

In 1997, Plaintiff conducted an isotopic natural gas analysis. *Id.* Plaintiff alleged that the natural gas industry widely accepts isotopic gas analysis "as the definitive technique to be used in determining the origin, source and exact chemical properties of natural gas." *Id.* In layman's terms, isotopic analysis identifies "the

---

[3] Migration of natural gas may occur after excavated gas is injected into a depleted reef reservoir. Steven D. McGrew, Note, *Selected Issues in Federal Condemnations for Underground Natural Gas Storage Rights: Valuation Methods, Inverse Condemnations, and Trespass*, 51 Case W. Res. L. Rev. 131, 138 (2000). Migration is essentially the natural gas moving throughout the ground. *See id.*

[4] At the time, ANR Pipeline Corporation owned Defendant's storage field and operated the field as Michigan Consolidated Gas Company. *Id.* at 2. Defendant bought ANR Pipeline in 2007. *Id.* For purposes of the motion to dismiss, therefore, the Court will refer to the parties collectively as "Defendant."

chemical fingerprint" of natural gas, which is then compared to natural gas found elsewhere. *Id.*

Plaintiff's isotopic analysis found natural gas from Defendant's storage field in Plaintiff's reservoir. *Id.* At that point, Plaintiff's experts believed "that there ha[d] been an intrusion of storage gas" from Defendant's field into Plaintiff's reservoir. *Id.* at 10. When Plaintiff revealed the findings to Defendant, Defendant again denied any leakage and maintained that its storage field and Plaintiff's reservoir were distinct reservoirs. *Id.*

Over the next year, Plaintiff continued to see rising pressure in its well. *Id.* So Plaintiff again contacted Defendant and asked if Defendant would "participate in a new, joint analysis of gas samples." *Id.* But Defendant refused to engage in any testing or data collection. *Id.* at 10–11.

The Michigan Department of Environmental Quality later directed Plaintiff to start producing natural gas from its reservoir or abandon the property. *Id.* at 12. Plaintiff reluctantly "proceeded to extract several hundred thousand cubic feet of gas from the reservoir over a number of years." *Id.* at 13. During that span, Plaintiff believed the gas produced from its well contained samples from Defendant's storage field. *Id.* In the end, Plaintiff's gas production lowered the pressure in its well. *Id.* But when Plaintiff stopped producing gas in May 2019, the pressure in the well built up again. *Id.*

In 2020, the Pipeline and Hazardous Materials Safety Administration ("PHMSA") "imposed safety standards and reporting requirements on underground

natural gas storage facilities." *Id.* at 14; *see* 49 C.F.R. § 192.12(b)(2). Plaintiff began to worry about the PHMSA regulatory effect on its reservoir because of the gas migration from Defendant's storage field. ECF 1, PgID 15. Plaintiff then contacted Defendant which, this time, agreed to a joint sample collection. *Id.* Plaintiff later sent its samples to the same experts who conducted the 1997 isotopic analysis. *Id.* The experts' report again confirmed the presence of natural gas from Defendant's storage field in Plaintiff's reservoir. *Id.* The report "also excluded any other potential source of gas migration as the cause of pressurized storage gas" in Plaintiff's reservoir. *Id.*

Plaintiff believed Defendant knew since 1980 about the "high probability" of gas migration from Defendant's storage field into Plaintiff's reservoir. *Id.* at 7. Defendant allegedly knew about the migration because Defendant had hired an expert to survey the field and the expert later informed Defendant about the migration issue. *Id.* at 7–8.

Plaintiff also suggested that Defendant concealed the gas migration from Plaintiff and made materially false statements to Defendant and others when Plaintiff raised the migration issue with Defendant in the late 1990s. *Id.* at 9–11. Plaintiff further alleged Defendant has no plan to stop sending gas into Plaintiff's reservoir and has not paid Plaintiff for the rights to use its reservoir for natural gas storage. *Id.* at 16.

Based on the events, Plaintiff sued Defendant for six claims. First, Plaintiff asserted a claim under 42 U.S.C. § 1983 because Defendant's actions, under the color of state law, amounted to a de facto taking of Plaintiff's property in violation of its

Fifth Amendment right. *Id.* at 18–20. Plaintiff's second claim asserted an inverse condemnation claim because Defendant unlawfully took Plaintiff's property for public use without just compensation and in violation of the Michigan Constitution. *Id.* at 20–22. Plaintiff's remaining state law claims against Defendant asserted trespass, nuisance, negligence, and unjust enrichment. *Id.* at 22–26. And last, Plaintiff sought declaratory relief under 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57. *Id.* at 26–27. The relief sought a declaration that Defendant must pursue an adverse condemnation of Plaintiff's property under federal law and must comply with the new PHMSA regulations. *Id.* Defendant asserted several reasons to dismiss Plaintiff's claims, including that each claim is time-barred. ECF 10, PgID 97–104.

## LEGAL STANDARD

The Court may dismiss a claim under Rule 12(b)(6) if "the allegations in the complaint affirmatively show that the claim is time-barred." *Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 786 (6th Cir. 2016) (quotation omitted). The Court may also grant a Rule 12(b)(6) motion if the complaint fails to allege facts "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). The Court must view the complaint in the light most favorable to the plaintiff, presume the truth of all well-pleaded factual assertions, and draw every

reasonable inference in favor of the nonmoving party. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

But the Court will not presume the truth of legal conclusions in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true or not," then the Court must dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009). To resolve a Rule 12(b)(6) motion, the Court may rely on "exhibits attached [to the complaint] . . . and exhibits attached to [D]efendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to [the] claims." *Bassett*, 528 F.3d at 430.

## DISCUSSION

The Court will address Defendant's arguments to dismiss each claim in turn. For each claim, the Court will first determine whether the claim is time barred.

I.   <u>42 U.S.C. § 1983 Claim</u>

The Fifth Amendment's Takings Clause prohibits the Government from taking "private property [] for public use, without just compensation." U.S. Const. Amend. V. Until recently, federal courts rarely heard § 1983 claims that stemmed from a Takings Clause violation. *Knick v. Twp. of Scott*, --- U.S. ---, 139 S. Ct. 2162, 2167 (2019). Now, however, a property owner may assert a § 1983 claim "for a violation of the Takings Clause as soon as a government takes [its] property for public use without paying for it." *Id.* at 2170.

6

Defendant asserted two arguments for dismissing the § 1983 claim: First, that the claim is time-barred. ECF 10, PgID 101–02. And second, that Plaintiff failed to state a claim because the storage field operated under the color of federal law, not state law. *Id.* at 108–09. The Court will address each argument in turn.

A.   *Limitations Period*

"Limitations periods in § 1983 suits are to be determined by reference to the appropriate state statute of limitations and the coordinate tolling rules." *Hardin v. Straub*, 490 U.S. 536, 539 (1989) (quotation omitted). For § 1983 claims arising in Michigan, federal courts borrow the state's three-year limitations period for personal injury actions. *Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 430 (6th Cir. 2016) (citations omitted); Mich. Comp. Laws § 600.5805(2) ("[T]he period of limitations is 3 years after the time of death or injury for all actions to recover damages . . . for injury to a person or property.").

Although state law governs the length of a limitation period for § 1983 claims, federal law governs when the § 1983 claim accrues. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "Ordinarily, the limitation period starts to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007). In other words, the limitations period begins to accrue after the event that "should have alerted the typical lay person to protect his or her rights." *Id.* (quotation omitted). For takings claims, a plaintiff's injury arises when the Government takes the property. *Stringer v. Town of Jonesboro*, 986 F.3d 502, 511 (5th Cir. 2021); *see Knick*, --- U.S. ---, 139 S.

7

Ct. at 2170 ("We have long recognized that property owners may bring . . . [takings] claims against the . . . Government as soon as their property has been taken.").

The Sixth Circuit recently addressed when a property owner can assert a § 1983 federal takings claim in federal court after *Knick*. *Harrison v. Montgomery Cnty.*, --- F.3d ---, 2021 WL 1881382 (6th Cir. May 11, 2021). But the parties did not brief *Knick* and could not brief *Harrison*. The Court will therefore decline to address the limitations argument. Instead, the Court will dismiss the claim for failure to state a claim.

### B.    *Failure to State a Claim*

Section 1983 creates a private right of action for persons "who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of *state law*." *Smith v. Salem*, 378 F.3d 566, 576 (6th Cir. 2004) (emphasis added). Supreme Court precedent creates an implied private right of action for certain constitutional deprivations caused by individuals who act under the color of *federal law*. *Hernandez v. Mesa*, --- U.S. ---, 140 S. Ct. 735, 741 (2020) (detailing the development of the implied private right of action created under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971)).

Plaintiff alleged Defendant became a state actor under § 1983 because it "exercise[d] powers such as eminent domain" which are "traditionally exclusively reserved to the State." ECF 1, PgID 18. Yet Plaintiff alleged Defendant's de facto taking is regulated by the Natural Gas Act ("NGA") and the Federal Energy Regulatory Commission ("FERC"). *Id.* at 18–19. Indeed, Plaintiff alleged "Defendant

has the obligation to pay Plaintiff just compensation for taking its property [] [u]nder 15 U.S.C. § 717f(h)." *Id.* at 19. But in the response brief, Plaintiff maintained Defendant acted as a state actor because Defendant "exercise[d] powers traditionally exclusively reserved to the State" such as eminent domain. ECF 13, PgID 139.

The argument that Defendant acted under the color of state law is unpersuasive for two reasons. First, the Federal Government has eminent domain powers. *United States v. Carmack*, 329 U.S. 230, 236–37 (1946) (noting the historical roots of "the federal power of eminent domain"). It follows that State Governments are not the only governmental actors that have eminent domain powers. And second, the complaint identified no state law that authorized Defendant to take its property. *See* ECF 1, PgID 18–20. Rather, Plaintiff alleged Defendant acted under federal law—and only under federal law. *Id.* at 18–19. Plaintiff claimed the NGA and FERC regulate Defendant and its natural gas facility. *Id.* And Plaintiff claimed the NGA granted Defendant eminent domain powers. *Id.* at 19; *see* 15 U.S.C. § 717f(h) (A holder of a certificate "may acquire [property rights] by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located."). All told, Plaintiff's sole allegation that Defendant "exercise[d] powers such as eminent domain," ECF 1, PgID 18, is not enough to plausibly state a claim that Defendant acted under the color of *state* law.

The response brief, however, argued Defendant acted under both state and federal law. ECF 13, PgID 140. But "[t]he [NGA] is a federal statute implementing a nationwide federal program. Accordingly, its interpretation is a matter of federal

law." *Columbia Gas Transmission Corp. v. Exclusive Nat. Gas Storage Easement*, 962 F.2d 1192, 1196 (6th Cir. 1992). And the response brief claimed only one Michigan law allowed Defendant to exercise eminent domain: Mich. Comp. Laws § 213.23. ECF 13, PgID 139–40. But that law applies to "public corporations" and "state agencies." § 213.23(1). And a "public corporation" means "all counties, cities, villages, boards, commissions and agencies made corporations for the management and control of public business and property." § 213.21. The complaint never suggested Defendant was a "public corporation." *See* ECF 1. Instead, Plaintiff alleged Defendant is a "foreign corporation" *Id.* at 1. In sum, Defendant did not act under the color of Mich. Comp. Laws § 213.23.

The response brief also asserted Plaintiff may claim a violation of a federal right through § 1983. ECF 13, PgID 140 (citing *Blessing v. Freestone*, 520 U.S. 329, 340 (1997)). But the argument does not help Plaintiff because to assert a § 1983 claim under *Blessing*, Defendant must be a *state actor*. 520 U.S. at 341 ("[T]he [federal] statute must unambiguously impose a binding obligation on the *States*."). In all, Plaintiff did not plausibly allege Defendant was a state actor or acted under the color of state law. The Court will therefore dismiss the § 1983 claim.

II.   <u>Inverse Condemnation Claim</u>

An inverse condemnation claim "is a cause of action against a governmental defendant to recover the value of property which has been taken" without formal

10

eminent domain proceedings. *Mays v. Gov. of Mich.*, 506 Mich. 157, 173 (2020) (quotation omitted).

Defendant moved to dismiss the inverse condemnation claim for three reasons. For one, the claim is time-barred. ECF 10, PgID 102–03. Two, Plaintiff lacked a property interest in the land that Defendant's natural gas could invade. *Id.* at 106–07. And three, Defendant had a prescriptive easement to the area where its natural gas would have spread. *Id.* at 104–06. The Court will address each argument in turn.

A.    *Limitations Period*

Defendant claimed the limitations period for an inverse condemnation claim is six years. ECF 10, PgID 102–03 (citing *ANR Pipeline Co. v. 60 Acres of Land*, 418 F. Supp. 2d 933, 946 (W.D. Mich. 2006)); *see* Mich. Comp. Laws § 600.5813 ("All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes."). But in Michigan, courts have explained the limitations period for an inverse condemnation claim is fifteen years, if the owner has a present interest in the property. *Difronzo v. Vill. of Port Sanilac*, 166 Mich. App. 148, 153–54 (1988); *see also Lakeside Resort, LLC v. Crystal Tp.*, No. 324799, 2016 WL 1358584, at *15 (Apr. 5, 2016) ("*Difronzo* has represented the law in Michigan on the issue presented for nearly 30 years, and this Court in multiple unpublished opinions has recognized and honored the 15-year limitations period pursuant to *Difronzo* in the context of inverse condemnation

11

actions."). Because Plaintiff alleged an ownership interest, ECF 1, PgID 3, 21, the Court will apply the fifteen-year limitations period under *Difronzo*.

The Michigan Supreme Court has also developed the "stabilization doctrine" for the accrual of inverse-condemnation claims. *Mays v. Gov. of Mich.*, 506 Mich. 157, 185 n. 10 (2020).[5] Under this doctrine, the limitations period for an inverse condemnation claim, in which a plaintiff alleges "a continuous wrong by the condemnor," "does not begin to run until the consequences of the condemnor's actions have stabilized." *Hart v. City of Detroit*, 416 Mich. 488, 504 (1982). "The precise point in time when the running of the limitation period is triggered is determined by the facts and circumstances of each case." *Id.*

Plaintiff claimed Defendant has continuously caused natural gas from its storage field "to migrate under high pressure into Plaintiff's property" and that Defendant "intends to continue" to do so into the future. ECF 1, PgID 21. Based on the complaint, the stabilization doctrine plausibly applies to Plaintiff's claim. As a result, "[i]t is for the trier of fact to determine whether a continuous wrong was involved here and, if so, when the consequences of this wrong had stabilized, thus triggering the" limitations period. *Hart*, 416 Mich. at 504. The Court will therefore decline to dismiss the inverse condemnation claim as time-barred.

---

[5] The stabilization doctrine is still good law for Michigan inverse condemnation claims. *Id.* ("We also note that this Court's decision in [*Garg v. Macomb Cnty. Comm. Mental Health Servs.*, 472 Mich. 263 (2005)] never mentioned *Hart*, nor did it abolish the stabilization doctrine. We believe that *Hart* remains good law because this Court has never overruled it.").

### B.    *Property Interest*

Next, Defendant claimed Plaintiff lacked a property interest "in the subsurface pore space that [Defendant] could invade or take." ECF 10, PgID 106. Defendant suggested only a "surface owner possesses the right to the storage space created after the [natural gas is removed from the reservoir]." *Id.* at 107 (quoting *Dep't of Trans. v. Gioke*, 220 Mich. App. 614, 617 (1996)). Because Plaintiff never alleged it had obtained those property rights from the surface owners, Defendant reasoned that Plaintiff failed to state an inverse condemnation claim. *Id.* at 107.

But the argument about whether Plaintiff has a property interest is best to be made at summary judgment for three reasons. First, the Uniform Condemnation Procedures Act ("UCPA") gives the "surface owner[]" "the right to storage space created after the [natural gas is removed from the reservoir.]" *Gioke*, 220 Mich. App. at 617. At the motion to dismiss stage, there are not enough facts to determine whether the UCPA applies. For example, the facts fail to show whether the land was ever condemned. Because of that, the Court cannot determine whether the UCPA applies.

Second, even if the UCPA applied, the law allows parties to transfer storage space rights through an instrument. *Id.* at 616 ("[F]luid mineral and gas rights are considered excluded when a government agency acquires an interest in land *unless* the instrument granting the land to the agency specifically includes those rights.") (emphasis added). Because the Court has not seen the instrument that granted

Plaintiff's rights to the "well and the incipient [] reservoir," the Court cannot find that no storage rights passed to Plaintiff. ECF 1, PgID 3.

And third, Defendant's argument focused only on the subsurface rights created from Plaintiff's oil and gas leases. ECF 10, PgID 107 ("[Plaintiff] *only* alleges that it 'obtained a number of exclusive, paid up oil and gas leases.'") (emphasis added) (quoting ECF 1, PgID 3). Besides the leases, Plaintiff allegedly owned the natural gas "well and its incipient []reservoir" where Defendant's natural gas had invaded. ECF 1, PgID 3. In all, Plaintiff alleged it had "exclusive possession" rights to the reservoir based on these property interests, *id.* at 22, and thus Plaintiff plausibly claimed it owned the property rights that Defendant allegedly violated.

C.   *Prescriptive Easement*

Defendant also advanced an affirmative defense of having a prescriptive easement to Plaintiff's land. ECF 10, PgID 104–06; *see Benninghoff v. Tilton*, Nos. 284637, 284736, 2009 WL 3789981, at *21 (Mich. Ct. App. Nov. 12, 2009) ("[A]n inverse condemnation claim premised on a vested adverse possession or prescriptive easement is necessarily untimely."). But the argument is best saved for assertion at summary judgment.

"An easement by prescription results from use of another's property that is open, notorious, adverse, and continuous for a period of fifteen years." *Plymouth Canton Comm. Crier, Inc. v. Prose*, 242 Mich. App. 676, 679 (2000) (citations omitted). Defendant bears the burden to show it has a right to a prescriptive easement. *Matthews v. Nat. Res. Dep't*, 288 Mich. App. 23, 37 (2010).

The Court needs more evidence before finding Defendant has a prescriptive easement. For example, it could very well be—as Defendant suggested—that Plaintiff lacked a property right "in the subsurface pore space that [Defendant] could invade or take." ECF 10, PgID 106. If true, then Defendant must show its use of the property was adverse to the true property owner.

Because Defendant's three arguments to dismiss the inverse condemnation claim are best to be assessed at the summary judgment stage, the Court will deny the motion to dismiss the inverse condemnation claim.

III.   <u>State Common Law Claims</u>

Plaintiff asserted four state common law claims. The Court will address each in turn.

A.   *Trespass Claim*

A trespass requires an "unauthorized intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession." *Morse v. Colitti*, 317 Mich. App. 526, 551 (2016) (citing *Adams v. Cleveland–Cliffs Iron Co.*, 237 Mich. App. 51, 67 (1999)). Michigan common law recognizes actions for subsurface trespasses. *Hope Land Mineral Corp. v. Panhandle E. Pipe Line Co.*, No. 234202, 2003 WL 21279571, at *4 (Mich. Ct. App. June 3, 2003).

The limitations period for trespass claims is three years. *Morse*, 317 Mich. App. at 551; *see* Mich. Comp. Laws § 600.5805(2) ("[T]he period of limitations is 3 years after the time of . . . injury for all actions to recover damages for . . . injury to . . . property."). Because the Michigan Supreme Court has abrogated the

"continuing wrongs" doctrine for trespass claims, "[t]he limitations period runs from the time the claim accrues." *Morse*, 317 Mich. App. at 550–51 (citing Mich. Comp. Laws § 600.5827). In short, the limitations period for trespass claims run at the time of "the wrong," which is "when both the act and the injury first occur." *Id.* at 551 (citing *Marilyn Froling Revocable Living Tr. v. Bloomfield Hills Country Club*, 283 Mich. App. 264, 291 (2009)).

Here, the alleged trespass and the resulting injury occurred no later than 1997. At that time, Plaintiff had "definitive" isotopic analysis showing natural gas from Defendant's storage field spread into Plaintiff's reservoir. ECF 1, PgID 9. Plaintiff therefore knew about the trespass but failed to sue Defendant until more than twenty years later.

Still, Plaintiff argued the limitations period should be tolled under Michigan's fraudulent concealment statute, Mich. Comp. Laws § 600.5855. ECF 13, PgID 132–33. A plaintiff must plead three elements of fraudulent concealment with particularity. *Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 851 (6th Cir. 2006). First, the defendant must wrongfully conceal their actions. *Id.* Second, the plaintiff must fail "to discover the operative facts that are the basis of [the] cause of action within the limitations period." *Id.* And third, the plaintiff must have acted with "due diligence until discovery of the facts." *Id.*

Yet even if Defendant were to wrongfully conceal the gas migration, then the limitations period would not toll because Plaintiff knew about the gas migration since 1997. ECF 1, PgID 9. In fact, Plaintiff's knowledge was not a mere hunch; it rested

on an "isotopic analysis and gas 'finger printing.'" *Id.* According to Plaintiff, the "isotopic gas analysis is accepted" by "the natural gas industry, academia, and by regulatory bodies" "as the *definitive* technique to be used in determining the origin, source[,] and exact chemical properties of natural gas." *Id.* (emphasis added). Put another way, since 1997, Plaintiff had *definitive* proof that gas from Defendant's storage field migrated into its reservoir. *See id.* Plaintiff even conceded that, in 1997, it reached out to Defendant because Plaintiff "suspected [Defendant] might be the culprit, and sought to confirm its suspicion." ECF 13, PgID 133. As a result, Plaintiff cannot satisfy the second element of fraudulent concealment. *Drake v. City of Detroit*, 266 F. App'x 444, 449 (6th Cir. 2008) ("Clearly it cannot be said that [Plaintiff] failed to discover the operative facts of [a] . . . claim due to any subsequent conduct by the Defendant[].") The trespass claim is therefore not tolled under Mich. Comp. Laws § 600.5855.

Moreover, Plaintiff's 2019 injuries from the PHMSA regulations do not give rise to a new trespass claim. *Frank v. Linkner*, 500 Mich. 133, 155 (2017) ("Additional damages resulting from the same harm do not reset the accrual date or give rise to a new cause of action."); *Moore v. Gen. Motors LLC*, Nos. 348579, 349727, 2020 WL 5085949, at *4–5 (Aug. 27, 2020) (discussing that under recent Michigan Supreme Court precedent the limitations period runs from the date of the wrong). In brief, the Court will dismiss the trespass claim as time-barred.

B.    *Nuisance Claim*

The nuisance claim is time-barred for the same reasons as the trespass claim. Like trespass claims, nuisance claims are subject to a three-year limitations period. *Marilyn Froling Revocable Living Tr.*, 283 Mich. App. at 279; *see* Mich. Comp. Laws § 600.5805(2). Similarly, the limitations period for nuisance claims run from when "the 'wrong is done,'" which is "when both the act and the injury first occur." *Marilyn Froling Revocable Living Tr.*, 283 Mich. App. at 291. The alleged nuisance here is the migrated natural gas from Defendant's storage field. ECF 1, PgID 23. Again, Plaintiff has been definitively aware of the alleged nuisance since 1997 but failed to act on it until now. And because the limitations period expired almost two decades ago, the Court will dismiss the nuisance claim as time-barred.

C.    *Negligence Claim*

Likewise, the negligence claim is time-barred. The limitations period for negligence claims is three years. *See* Mich. Comp. Laws § 600.5805(2). Michigan Courts have never extended the continuing wrongs doctrine to negligence claims. *Blazer Foods, Inc. v. Rest. Props., Inc.*, 259 Mich. App. 241, 247 (2003) (citing *Traver Lakes Comm. Maint. Ass'n. v. Douglas Co.*, 224 Mich. App. 335, 341 (1997)). The claim therefore began to accrue "when both the act and the injury first occur." *Marilyn Froling Revocable Living Tr.*, 283 Mich. App. at 291. The negligent act was Defendant releasing storage gas into Plaintiff's reservoir and the harm was the physical damage to the property. ECF 1, PgID 24–25. But Plaintiff knew about Defendant's natural

18

gas on its property since 1997. For that reason, the limitations period expired almost two decades ago, and the Court will dismiss the negligence claim as time-barred.

### D.    Unjust Enrichment Claim

In Michigan, a limitations period for equitable relief is the same as the requested legal relief. Mich. Comp. Laws § 600.5815 ("[t]he prescribed period of limitations shall apply equally to all actions whether equitable or legal relief is sought."). To determine a claim's limitations period, Michigan Courts "first determine the true nature of the claim." *Adams v. Adams*, 276 Mich. App. 704, 710 (2007) (citation omitted). Michigan Courts will therefore "read[] the complaint as a whole, and [] look[] beyond mere procedural labels to determine the exact nature of the claim." *Id.* at 710–11; *see PCA Minerals, LLC v. Merit Energy Co., LLC*, 725 F. App'x 342, 347 (6th Cir. 2018) ("Michigan courts typically apply a gravamen analysis, that is, review the complaint in its entirety to determine the true nature of the claims, and apply the statute of limitations governing the legal gravamen claim to equitable claims that seek analogous relief.").

Plaintiff's unjust enrichment relief is merely a variation of Plaintiff's inverse condemnation claim. *See* ECF 1, PgID 25–26. The complaint alleged Defendant never compensated Plaintiff for the "unlawful taking" of "offloading and storing its natural gas on Plaintiff's property without charge." *Id.* At its core, Plaintiff's unjust enrichment claim sounds neither in nuisance, trespass, nor negligence; it focuses on how Defendant failed to fairly compensate Plaintiff for using Plaintiff's property. Because Plaintiff's unjust enrichment claim sounds in inverse condemnation, the

limitations period for both claims would be the same. Mich. Comp. Laws § 600.5815. Given that the Court did not dismiss the inverse condemnation claim as untimely, it follows that the Court cannot dismiss the unjust enrichment claim. The unjust enrichment claim will survive the motion to dismiss because it is premature to decide whether Defendant had a prescriptive easement to the property or whether Plaintiff did not own the subsurface pore space around the reservoir.

IV.   Declaratory Judgment Claim

Plaintiff asserted two declaratory judgment claims. First, Plaintiff sought a declaration that Defendant must "pursue an adverse condemnation" under the NGA. ECF 1, PgID 26. Plaintiff's second claim sought a declaration that Defendant must "report and otherwise comply with the PHMSA regulations concerning underground natural gas storage facilities" for its alleged extension onto Plaintiff's reservoir. *Id.* at 27. The Court will address each declaration in turn.

A.   *Adverse Condemnation Declaration*

Defendant raised two arguments to dismiss the adverse condemnation declaration. Defendant first asserted the claim is time-barred for the same reasons as the inverse condemnation claim. ECF 10, PgID 104. Because the Court declined to dismiss the inverse condemnation claim as time-barred, the Court will decline to dismiss the adverse condemnation declaratory relief as time-barred for the same reasons.

Defendant also argued the NGA lacks a private right of action that would allow Plaintiff to seek declaratory relief. ECF 10, PgID 110–11. But the Court will dismiss

the adverse condemnation declaratory relief because Plaintiff's allegations do not fit within the NGA's narrow private right of action.

"[T]he Declaratory Judgment Act does not 'extend' the 'jurisdiction' of the federal courts." *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 197 (2014) (citation omitted). Parties may only assert declaratory relief if "at the time of the lawsuit, one of the parties [] could bring a 'coercive' action that Congress authorized the federal courts to hear." *Mich. Corrs. Org. v. Mich. Dept. of Corrs.*, 774 F.3d 895, 902 (6th Cir. 2014). To that end, "[a] party may bring a coercive action only when a private right of action authorizes the party to seek an immediately enforceable remedy like money damages or an injunction." *Id.* (quotations omitted). Simply put, the NGA must grant either Plaintiff or Defendant with a private right of action for Plaintiff to bring a declaratory relief claim.

But Plaintiff failed to allege either that party fits within the NGA's "*narrow*, explicit private right of action." *Columbia Gas Transmission, LLC v. Singh*, 707 F.3d 583, 587 (6th Cir. 2013) (emphasis added). The NGA allows "any holder of a certificate of public convenience and necessity" to obtain property by eminent domain. 15 U.S.C. § 717f(h); *see also Baatz v. Columbia Gas Transmission, LLC*, 929 F.3d 767, 770 (6th Cir. 2019). Yet Plaintiff never alleged Defendant held "a certificate of public convenience and necessity" and could bring a claim under § 717f(h). ECF 1, PgID 16 ("[Defendant] has not sought to formally seek a certificate of need from FERC to adversely condemn the property.").

If Plaintiff had alleged Defendant held a certificate, then Plaintiff would have plausibly asserted declaratory relief. Although the NGA does not *require* certificate holders to bring an eminent domain proceeding against property owners like Plaintiff, the NGA *allows* certificate holders to assert those claims. § 717f(h) (any holder of a certificate of public convenience and necessity "*may* acquire the [right-of-way] by the exercise of . . . eminent domain in the district court of the United States . . . .") (emphasis added). On that basis, the NGA's private right of action fits in the Sixth Circuit's "coercive action" definition. *Mich. Corrs. Org.*, 774 F.3d at 902. But because the complaint lacked such an allegation, the Court will dismiss the declaratory relief for an adverse condemnation.

B.    *PHMSA Compliance Declaration*

Defendant raised two grounds to dismiss the PHMSA compliance declaration. First, Defendant argued the claim is time-barred because it is "a corollary to [Plaintiff's] tort claims." ECF 10, PgID 104. Second, Defendant claimed the Court should dismiss the claim because a declaration about compliance with the PHMSA regulations would not "serve a useful purpose in clarifying and settling the legal relations" between the parties. *Id.* at 111 n. 13 (quoting *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)). The Court will address each claim in turn.

First, Defendant's PHMSA declaration is distinct from Plaintiff's tort claims. The requested relief sought a declaration about whether Defendant must "report and otherwise comply with the PHMSA regulations" for its natural gas storage field. ECF

1, PgID 27. And the PHMSA regulations recently became mandatory in March 2021. *Id.* at 26; 49 C.F.R. § 192.12(b)(2). At the motion to dismiss stage, a declaration about the PHMSA regulations would not be useless. After all, the regulations recently became mandatory and that is presumably why Plaintiff sought clarity about the parties' responsibilities under the new regulations.

Last, the *Grand Trunk* test currently favors denying the motion to dismiss the declaratory relief as to the PHMSA declaration. 746 F.2d at 326. Based on the complaint, the declaratory relief would clarify the legal relations of the parties, while avoiding any friction between state and federal courts. *Id.* And the declaratory relief is not being sought for reasons of procedural fencing because the Court has diversity jurisdiction over the parties. *Id.* The Court will therefore not dismiss the declaratory relief as to the PHMSA declaration.

## CONCLUSION

The motion to dismiss is granted in part and denied in part. The Court has dismissed all claims except for the inverse condemnation and unjust enrichment claims, and the declaratory relief as to the PHMSA regulations. The Court will require Defendant to answer the complaint no later than June 29, 2021. After Defendant answers the complaint, the Court will schedule a Rule 16 conference.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant's motion to dismiss the complaint [10] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiff's Section 1983, trespass, nuisance, and negligence claims, and declaratory relief as to adverse condemnation are **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendant must **ANSWER** the complaint no later than **June 29, 2021**.

**IT IS FURTHER ORDERED** that the Clerk of the Court must **AMEND** Defendant's name on the docket to "TC Energy Corporation".

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: June 8, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 8, 2021, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager
